FILED
United States Court of Appeals
Tenth Circuit

January 23, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

SHERYL CLARK,

     Plaintiff–Appellant,

v.

DAVID EDMUNDS, Summit County
Sheriff, individually and in his
representative capacity; SUMMIT
COUNTY,

     Defendants–Appellees.

No. 07–4029

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:05–CV–350–BSJ)

---

David S. Pace, Pace & Schmidt, L.L.C., Salt Lake City, Utah, for
Plaintiff–Appellant.

Peter Stirba (Sarah E. Spencer with him on the brief), Stirba & Associates, Salt
Lake City, Utah, for Defendants–Appellees

---

Before **TYMKOVICH, McKAY**, and **SEYMOUR**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

     In this 42 U.S.C. § 1983 action, Plaintiff alleges that Defendant Sheriff

Edmunds used excessive and unreasonable force against her in the course of

taking her adult daughter into protective custody.  The district court granted

Defendants' motion for summary judgment, holding that the sheriff was entitled to qualified immunity and that there was no basis for County liability under § 1983. The court declined to exercise supplemental jurisdiction over Plaintiff's state constitutional claim. We have jurisdiction over this appeal under 28 U.S.C. § 1291.

The following facts are uncontroverted. On January 15, 2003, Sheriff Edmunds and two other officers arrived at Plaintiff's motel, a portion of which serves as her residence, in order to take her adult daughter into protective custody for an emergency mental health evaluation.[1] The officers entered through the office door and asked Plaintiff's daughter to come outside and speak with them. Outside of the motel, the daughter initially argued that she did not need an evaluation, but she eventually agreed to go with the officers. She asked if she could first go inside to tell her children what was happening, and the officers agreed. Once inside, the daughter went into the bathroom and began brushing her teeth. The sheriff stood in the doorway to monitor her actions. Plaintiff then approached the sheriff and asked if she could take her daughter to the hospital herself. He refused, and the daughter became argumentative. Plaintiff turned away and began moving toward the front of the residence.

---

[1] The sheriff had heard reports that Plaintiff's daughter might be suicidal. In the two weeks since the sheriff had taken office, there had been three suicides in the county.

The sheriff then grabbed Plaintiff's daughter by the arm and began to move quickly toward the front door of the residence. The daughter made a loud noise, and Plaintiff turned to see what was happening. The sheriff, believing that Plaintiff was about to attack him, used his free arm to push Plaintiff out of his path. Either as a direct result of the push or as a result of losing her balance or tripping, Plaintiff stumbled backwards and hit the glass dining room table and a chair. The sheriff continued outside with Plaintiff's daughter, where he ordered her handcuffed and taken to the hospital. He then stepped back inside the motel to explain to Plaintiff the reasons for taking her daughter into custody. Plaintiff did not tell the sheriff she had been injured.

Hospital personnel interviewed Plaintiff's daughter and subsequently released her. Plaintiff drove forty-five minutes to the hospital to pick up her daughter, then returned with her to the motel.

In her complaint, Plaintiff argued that the sheriff used unlawful and unreasonable force against her in violation of her Fourth Amendment and state constitutional rights. She alleged that she suffered significant, permanent, and disabling injury from the sheriff's push and her resultant collision with the table and chair.

Defendants filed a motion for summary judgment. In their memorandum in support, they included a statement of material undisputed facts. Plaintiff contested only two of these facts, but asserted several additional facts in her

response to the summary judgment motion. The district court granted Defendants' motion and dismissed Plaintiff's complaint. The court held that Plaintiff's § 1983 claim should be analyzed under the Fourteenth rather than Fourth Amendment and that Plaintiff had not demonstrated that the sheriff violated her Fourteenth Amendment substantive due process rights. Noting that Plaintiff had not alleged, much less demonstrated, inadequate training or any other policy basis for County liability, the court also dismissed with prejudice Plaintiff's claims against the County. The court then dismissed Plaintiff's state constitutional claim without prejudice, declining to exercise supplemental jurisdiction over the claim. Plaintiff appeals the court's grant of summary judgment to Defendants.

We review the district court's grant of summary judgment de novo, "review[ing] the evidence in the light most favorable to the nonmoving party." *Nelson v. McMullen*, 207 F.3d 1202, 1205 (10th Cir. 2000) (internal quotation marks omitted). However, because qualified immunity is "designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," we "review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings." *Id.* (internal quotation marks omitted). When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a strict two-part test: first, the plaintiff must show "that the defendant's actions violated a

constitutional or statutory right"; second, the plaintiff must show that this right was "clearly established at the time of the conduct at issue." *Id.* (internal quotation marks omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

Although Plaintiff originally argued that her claim was brought under the Fourth Amendment, she now agrees with the district court's determination that her claim does not fall under the Fourth Amendment because she was not actually seized by police. We likewise agree. *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (holding that seizure under Fourth Amendment "requires an intentional acquisition of physical control"); *see also Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (holding that "the Fourth Amendment 'reasonableness' standard does not apply to section 1983 claims which seek remuneration for physical injuries *inadvertently inflicted upon an innocent third party* by police officers' use of force while attempting to seize a perpetrator, because the authorities could not 'seize' any person other than one who was a deliberate object of their exertion of force"); *Childress v. City of Arapaho*, 210 F.3d 1154, 1156-57 (10th Cir. 2000) (holding that hostages injured when police shot at stolen minivan had no Fourth Amendment claim because police intended

to restrain minivan and fugitives, not hostages themselves).  The sheriff only intended to remove Plaintiff from his path to the door; he did not intend to acquire physical control over her.  Thus, no Fourth Amendment seizure occurred.

We therefore treat Plaintiff's claim as a Fourteenth Amendment substantive due process claim.  *See Childress*, 210 F.3d at 1157.  "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."  *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotation marks omitted).  To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power."  *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).  Rather, the plaintiff must show "a high level of outrageousness."  *Id.*  The conduct required to meet this standard depends on the circumstances.  "[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed."  *Lewis*, 523 U.S. at 853 (internal quotation marks omitted).

Based on the uncontroverted facts, we agree with the district court's conclusion that Plaintiff cannot establish that the sheriff's conduct shocks the conscience.  As the district court pointed out, the sheriff "had a legitimate interest

in maintaining custody of [Plaintiff's] daughter as he escorted her from [Plaintiff's] residence to a waiting law enforcement vehicle. His split-second decision to respond by clearing his path at the moment that [Plaintiff] turned back toward him served that interest, regardless of whether [Plaintiff] actually intended to interfere with his seizure of her daughter or not." *Clark v. Summit County Sheriff*, 508 F. Supp. 2d 929, 935 (D. Utah 2007); *see also Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995) (holding that it was objectively reasonable for officers in volatile situation to push to floor and handcuff third party whose relationship to suspect and possible reaction to situation were unknown). Moreover, we agree with the district court that Plaintiff has not raised a genuine issue of material fact as to whether the sheriff's actions toward Plaintiff were "tainted by an improper or malicious motive." *Lewis*, 523 U.S. at 855. The sheriff's response to the perceived threat Plaintiff presented does not rise to the level of egregiousness required under *Lewis*. We therefore conclude that Plaintiff has not shown the violation of a constitutional right and that the sheriff is entitled to qualified immunity. As to Plaintiff's § 1983 claim against the County and her state constitutional claim, we hold that the district court correctly dismissed these claims for the reasons described in its thorough memorandum opinion and order. *See Clark*, 508 F. supp.2d at 936-37.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.