FILED
United States Court of Appeals
Tenth Circuit

November 3, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

LISA NICOLE BRIDGES,

      Plaintiff - Appellant,

v.

BRANDON YEAGER,

      Defendant - Appellee.

No. 08-5169
(D.C. No. 07-CV-00670-GKF-FHM)
(N.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.

---

      Plaintiff-Appellant Lisa Nicole Bridges appeals from summary

judgment in favor of Defendant-Appellee Deputy Brandon Yeager on her civil

rights claims. 42 U.S.C. § 1983. Ms. Bridges sued the deputy solely in his

individual capacity for compensatory and punitive damages claiming that (1) he

used excessive force while arresting her, and (2) he falsely arrested her for assault

and battery on a police officer. In an oral ruling, the district court held that the

deputy was entitled to qualified immunity on both claims, further noting that the

---

     [*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

false arrest claim lacked an underlying constitutional violation. Aplt. App. at 30-31. We have jurisdiction under 28 U.S.C. § 1291 and affirm in part and reverse in part.

Background

The following facts are uncontroverted. On March 15, 2006, Ms. Bridges was charged with knowingly concealing stolen property, possession of marijuana, and possession of drug paraphernalia. Aplt. App. at 90-103. On January 8, 2007, she failed to appear as ordered, and the state district court issued a bench warrant for her arrest. Aplt. App. at 100-03. On January 31, 2007, an employee of a motel where Ms. Bridges was staying called the police for assistance in removing her from the premises. Aplt. App. at 71. The Mays County Sheriff's Department dispatched Deputy Yeager to the motel. Aplt. App. at 116-17. Shortly thereafter, he learned that there was a felony warrant for Ms. Bridges. Aplt. App. at 118. He arrested her outside her second-floor room. Aplt. App. at 120-22. She told him that there was no need to arrest her because she was about to turn herself in. Aplt. App. at 107. Regardless, the deputy arrested her and handcuffed her hands behind her back. Aplt. App. at 123. He did not handcuff her tightly because he "wasn't anticipating any problems." Aplt. App. at 79, 123-124. There was a great disparity in the parties' sizes and weights: Ms. Bridges was approximately 5 feet tall and about 125 pounds whereas the deputy was approximately 6 feet five

inches and about 285 pounds.  Aplt. App. at 192.

As the deputy escorted Ms. Bridges toward the stairs, he noticed that she had a bottle of prenatal vitamins, and she told him that she was pregnant.  Aplt. App. at 125.  The bottle of prenatal vitamins fell to the ground.  Ms. Bridges asked the deputy to retrieve the vitamins, but he refused, stating that he would come back and get the bottle before they left.  Aplt. App. at 81.  Ms. Bridges then removed her right hand from the handcuffs.  Aplt. App. at 81, 127.  After she removed her right hand from the handcuffs, the deputy pushed Ms. Bridges, and she fell down the stairs.  Aplt. App. at 131.  While she was face-down on the ground at the bottom of the stairs, the deputy placed his knee on her back and struggled to re-handcuff her right hand.  Aplt. App. at 82.  Ms. Bridges was screaming that she was pregnant and that the deputy's actions were hurting her baby.  Aplt. App. at 82-83.  The deputy was simultaneously shouting at Ms. Bridges to stop resisting arrest.  Aplt. App. at 82-83.

In considering Deputy Yeager's motion for summary judgment, the district court noted that there were too many disputed facts to grant summary judgment on the merits of the excessive force claim.  Aplt. App. at 22, 30.  Instead, the district court granted qualified immunity because "plaintiff has failed to show that objectively reasonable officers could not have thought the force used to be constitutionally permissible given the fact that she had slipped the cuffs and she appeared to be swinging them at the officer."  Aplt. App. at 31.  The district court

- 3 -

granted summary judgment to the deputy on the false arrest claim on both substantive and qualified immunity grounds because there was a valid felony warrant for Ms. Bridges' arrest. Aplt. App. at 30.

## Discussion

We generally review the district court's grant of summary judgment de novo, considering all evidence in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Clark v. Edmunds, 513 F.3d 1219, 1221-22 (10th Cir. 2008). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it could affect the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

This court, however, reviews summary judgment decisions involving a qualified immunity question differently than other summary judgment rulings because of the purposes behind qualified immunity. Clark, 513 F.3d at 1222. When a defendant raises a qualified immunity defense on summary judgment, the plaintiff must show that (1) the defendant's conduct violated a constitutional right, and (2) the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); see Pearson v. Callahan, 129 S. Ct. 808, 818 (2009) (holding that the sequence of the Saucier inquiry is discretionary). Only if the plaintiff meets this two-part test will the defendant assume the normal burden of showing that there

are no disputed material facts and that he is entitled to judgment as a matter of law. <u>Clark</u>, 513 F.3d at 1222. A grant of qualified immunity is not appropriate if material facts are in dispute. <u>Olsen v. Layton Hills Mall</u>, 312 F.3d 1304, 1313 (10th Cir. 2002).

A police officer violates an arrestee's Fourth Amendment right to be free from excessive force if the officer's actions are not "objectively reasonable in the light of the facts and circumstances . . . from the perspective of a reasonable officer on the scene." <u>Id.</u> at 1313-14 (internal quotation marks and citations omitted). This standard directs the court to balance several factors including the severity of the alleged crime, the degree of threat that the suspect poses to the officer and the public, and whether the suspect cooperates or resists. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 396-97 (1989); <u>Olsen</u>, 312 F.3d at 1314. We have observed, "Because the reasonableness inquiry overlaps with the qualified immunity analysis, a qualified immunity defense [is] of less value when raised in defense of an excessive force claim." <u>Olsen</u>, 312 F.3d at 1314 (internal quotation marks and citations omitted).

We have held that "summary judgment motions may not be granted on any excessive force claims under § 1983 for which <u>any</u> genuine issue of material fact remains—regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation." <u>Id.</u> (discussing <u>Allen v. Muskogee</u>, 119 F.3d 837, 839

(10th Cir. 1997)). Deputy Yeager argues that the disputed facts are not material because whether a reasonable officer could have believed his actions to be lawful is a legal question, and thus summary judgment is proper. Aplee. Br. at 21-22. As noted by the district court, however, there are many material disputed facts regarding the objective reasonableness of the force used by the deputy. Aplt. App. at 22, 30.

During his deposition, the deputy testified that Ms. Bridges slipped her right hand from the handcuffs and struck him across the face. Aplt. App. at 108-09. He further testified that when she removed her right hand from the handcuffs, she swung her left hand, which was still in the handcuff, in his direction. Aplt. App. at 128. He claims that he believed that Ms. Bridges was going to hit him with the handcuffs and that he pushed her away to protect himself. Aplt. App. at 110, 129-31. After Ms. Bridges stumbled down the stairs, the deputy attempted to re-handcuff her. She resisted his efforts despite repeatedly being told to stop resisting arrest. Aplt. App. at 82-83. According to the deputy, he needed to bring Ms. Bridges "to the ground" and put his knee in Ms. Bridges back to regain custody and control of the situation. Aplt. App. at 111-12, 132.

Ms. Bridges tells a different story. She argues that she was cooperative and presented no threat, noting the great disparity in the parties' sizes and weights. Aplt. Amend. Br. at 12. She admits that she slipped her right hand out of the handcuff but states that she only did so to retrieve her prenatal vitamins, which

the deputy had deliberately knocked to the floor. Aplt. App. at 182, 187. She denies raising her left (handcuffed) hand in the deputy's direction, and asserts that he pushed her down the stairs immediately after she bent down and turned to her right to pick up her vitamins. Aplt. App. at 175, 183, 187. She states that she fell down several steps, hit a wall, and fell to the ground. Aplt. App. at 175. While she was already face down on the ground, Ms. Bridges states that the deputy got on top of her, put his knee in her back, and smashed her head into the ground. Aplt. App. at 175, 188. She argues that she was not resisting his efforts to re-handcuff her but rather she was merely holding her right hand under her stomach to try to protect her unborn baby from abuse. Aplt. App. at 188.

On the issue of excessive force, these two versions of the facts are incongruent. While qualified immunity protects an officer who makes a reasonable mistake of fact or law, or a mistake based upon a mixed question involving both, Pearson, 129 S. Ct. at 815, here we have disputed facts going to whether a reasonable officer could perceive that Ms. Bridges was about to hit him and whether the subsequent force, including pushing her down the stairs and putting a knee on her back while she was face-down on the ground, was reasonable. At this stage of the summary judgment procedure, we must view the evidence in the light most favorable to the plaintiff. Cortez v. McCauley, 478 F.3d 1108, 1126 (10th Cir. 2007) (en banc). The district court granted qualified immunity on the excessive force issue "given the fact that [Ms. Bridges] had

slipped the cuffs and she appeared to be swinging them at the officer." Aplt. App. at 31. Yet, whether Ms. Bridges appeared to be swinging or swung the handcuffs at the deputy is hotly disputed. The district court's resolution of whether the deputy made a reasonable mistake of fact or law concerning the degree of force could well turn on a jury's resolution of this issue. The district court also did not address the objective reasonableness of the force used by the deputy to re-handcuff Ms. Bridges after she fell down the stairs. Certainly, Ms. Bridges was non-compliant when she removed her hand from the handcuff. But the law is clearly established that a court should look at the totality of the circumstances when assessing the reasonableness of the force used—the fact that a suspect was non-compliant or resisted arrest in isolation does not authorize the use of excessive force. See, e.g., Weigel v. Broad, 544 F.3d 1143, 1151-53 (10th Cir. 2008). Officers can "'be on notice that their conduct violates established law even in novel factual circumstances,'" Cortez, 478 F.3d at 1115 (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)), but only in "obvious" cases, Brosseau v. Haugen, 543 U.S. 194, 199 (2004). Accordingly, "[T]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Fogarty v. Gallegos, 523 F.3d 1147, 1161 (10th Cir. 2008). As we have previously noted, "officials committing outrageous, yet sui generis, constitutional violations ought not to shield their behavior behind qualified immunity simply

-8-

because another official has not previously had the audacity to commit a similar transgression." Jones v. Hunt, 410 F.3d 1221, 1230 (10th Cir. 2005). Fully mindful that Ms. Bridges removed her hand from the handcuffs to pick up her prenatal vitamins and accepting her version of the facts as we must, we think that pushing a pregnant woman down a flight of stairs and then kneeing her in the back and smashing her head against the ground while she is attempting to protect her unborn child is not only excessive, but also not entitled to qualified immunity. Of course, Ms. Bridges' version of the facts may not be the one the jury accepts. But it is not our function to resolve facts at this stage of the proceedings. The district court erred in granting summary judgment on the excessive force claim at this stage of the proceedings.

As to Ms. Bridges' false arrest claim, she appears to argue that the deputy arrested her separately and without probable cause for assault and battery on a police officer. Aplt. App. at 158. No evidence supports the theory that the deputy arrested Ms. Bridges separately for assault and battery. Rather, the evidence indicates that he arrested her because of the outstanding warrant for her arrest. The district court did not err in its resolution of this claim.

We AFFIRM the district court's grant of summary judgment on the false arrest claim. We REVERSE the grant of qualified immunity on the excessive

force claim and remand for further proceedings.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge