**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 31, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

VANESSA ARNOLD,

Plaintiff-Appellant,

v.

HAROLD CURTIS, Deputy, Utah
County Sheriff's Department, also
known as SKIP CURTIS,

Defendant-Appellee.

No. 08-4064

(D. of Utah)

(D.C. No. 2:04-CV-564-DAK)

### ORDER AND JUDGMENT[*]

Before **HARTZ**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.

Plaintiff Vanessa Arnold and Sergeant Harold Curtis were involved in an

altercation at a Provo, Utah, movie theater. Under Arnold's version of the facts,

Curtis—seeking to prevent Arnold from interfering with an arrest—displayed his

police badge, grabbed Arnold, and threw her down a flight of stairs. Arnold

brought suit under 42 U.S.C. § 1983, claiming Curtis's assault violated her

constitutional rights.

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Curtis moved for summary judgment based on qualified immunity, but the district court denied his motion and we affirmed on interlocutory appeal. *See Arnold v. Curtis*, 243 F. App'x 408 (10th Cir. 2007). On remand, the case went to trial and the jury found for Curtis. Arnold now appeals, arguing the district court erroneously refused to instruct the jury on her Fourth Amendment excessive force theory, even though she presented enough evidence to support it.

We agree that Arnold's evidence was sufficient to warrant a Fourth Amendment instruction. Exercising jurisdiction under 28 U.S.C. § 1291, we therefore REVERSE the judgment of the district court and REMAND for a new trial.

## I. Background

### A. The Altercation

The parties vehemently dispute the events leading to the present suit.[1] They agree, however, regarding some background details: Arnold and her friend, Lorenzo Castillo, attended a movie at a theater in Provo, Utah. Curtis, a sergeant with the Utah County Sheriff's Office but in plainclothes at the time, attended the same movie with his wife. While the movie was playing Curtis approached Arnold and Castillo—who had been conversing with each other in their

---

[1] For a more complete recitation of the parties' narratives, see *Arnold*, 243 F. App'x at 409–11.

seats—and told them to keep quiet. After the movie, when the theater was mostly empty, Castillo confronted Curtis and requested an apology.

From here, the parties' narratives diverge sharply. Arnold testified at trial that Castillo was polite in his request for an apology, but Curtis became aggressive, telling Castillo if he "[w]ant[ed] to play, we'll play." Appellee's Supp. App. at 7. Curtis, on the other hand, testified it was Castillo who became aggressive, clenching his fist and threatening to attack. In any event, it is undisputed that at some point Curtis displayed his police badge and arrested Castillo. Arnold then attempted to intervene.

According to Arnold, she pleaded for Curtis to let Castillo go but did not attempt to physically separate the two men. She requested several times that they simply drop the matter and walk away. In response, Curtis grabbed Arnold by the shoulders, turned her around, and threw her down the theater steps.

Curtis testified to a very different chain of events. He claimed Arnold became hysterical when he displayed his police badge and placed Castillo under arrest. Seeking to "deescalate" the situation, Curtis attempted to lead Castillo out of the theater. Appellee's Supp. App. at 55–57 (Trial Tr.). But Arnold became even more agitated, and she lunged at Curtis and grabbed him around the waist. At Curtis's request, Castillo told Arnold to release her hold on Curtis. But after letting go she lunged at Curtis again. This time, Curtis reached his arm out to

-3-

prevent Arnold from grabbing him. During this frenzy, Arnold tripped and fell down the theater stairs.

At trial, both Arnold and Curtis called several witnesses to testify in support of their versions of the story. Each side's version contained some inconsistencies.

## B.     *The Jury Instructions*

Before trial, the parties submitted proposed jury instructions and supporting memoranda. Curtis argued the evidence showed he had not "seized" Arnold and therefore the Fourth Amendment did not apply. According to Curtis, the evidence supported only an outrageous conduct theory, and the Fourteenth Amendment's substantive due process "shocks the conscience" test applied. Arnold, meanwhile, contended Fourth Amendment standards should apply. Under her theory of the case, Curtis engaged in excessive force under color of state law, a constitutional violation if his conduct was intentional and objectively unreasonable. In Arnold's view, conscience-shocking behavior was not a prerequisite to relief.

Prior to submitting the case to the jury, the district court held a jury instruction conference. Arnold's counsel again advocated for a Fourth Amendment standard: "I do believe that the Fourth Amendment standard of excessive force based on objective reasonableness is the test . . . ." Appellee's Supp. App. at 75 (Jury Instruction Conference). He argued Tenth Circuit case law established that "the Fourth Amendment requires an intentional acquisition of

physical control" and "the jury could find that . . . there was an intentional acquisition of physical control on Miss Arnold." *Id.* According to Arnold's lawyer, "the injuries that were inflicted were not inadvertent"; instead, "[t]hey were deliberate and intentional as far as [Curtis] grabbing [Arnold] and throwing her." *Id.*

Despite these arguments, the district court found Curtis's position more persuasive and was unswayed by Arnold's counsel: "I disagree with you about what the state of the law is. And if I'm wrong and you lose, then you've got a wonderful appeal issue." *Id.* at 76. Attempting a compromise, Arnold's counsel suggested an alternative instruction, where the jury would use the Fourth Amendment standard "if [it found] that defendant Curtis acted intentionally," but would use the shocks the conscience test if it found Curtis's actions to be inadvertent. *Id.* Again the court disagreed, stating, "I guess I'm happy with our current instructions," which contained only the shocks the conscience standard. *Id.* at 77.

Ultimately, the instructions read to the jury included the following:

### JURY INSTRUCTION NO. 17

\* \* \*

> The Fourteenth Amendment to the United States Constitution applies to claims of excessive force where the party claiming excessive force was not in fact seized. Under the Due Process Clause of the Fourteenth

Amendment, only official conduct that "shocks the conscience," amounts to a constitutional violation.

In this case, Ms. Arnold claims that the defendant used excessive force against her while he was arresting Lorenzo Castillo. Plaintiff was never the subject of the arrest. Plaintiff was a third party to the arrest of Lorenzo Castillo. Whether or not the force used against Ms. Arnold "shocks the conscience" is a question to be determined by you in light of all the evidence received in the case.

App. at 7.

### JURY INSTRUCTION NO. 18

To demonstrate conduct that "shocks the conscience," a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. A plaintiff must demonstrate that the force be inspired by malice or by excessive zeal that shocks the conscience. In other words, a plaintiff must show a high level of outrageousness and a magnitude of potential or actual harm that is truly conscience-shocking under the circumstances.

App. at 8.

Utilizing these instructions, the jury answered only one question in rendering its verdict. It concluded that "Curtis [did not] use excessive force that shocks the conscience in violation of Ms. Arnold's Fourteenth Amendment right to due process." App. at 2.

## II. Analysis

Arnold raises several claims on appeal, but one is dispositive and we need not reach the others. She asserts the district court committed legal error when it

failed to instruct the jury on her Fourth Amendment theory and instead gave instructions only on Curtis's Fourteenth Amendment substantive due process theory. We agree Arnold presented sufficient evidence to support her theory and the district court erred in failing to instruct on the Fourth Amendment claim.

## A.    *The Record on Appeal*

Before reaching the merits of Arnold's jury instruction claim, we must address a preliminary issue. Curtis asserted in his brief and at oral argument that whatever the merits of Arnold's position, she failed to prepare an adequate appendix and therefore waived her jury instruction claim. In response, Arnold's counsel stated at oral argument that he believed all relevant materials were transmitted to the Tenth Circuit by the district court, and he had therefore fulfilled his duty to ensure the completeness of the appellate record.

Our local rules state that when an appellant is represented by retained counsel, as is the case here, the record on appeal "is retained in the district court." 10th Cir. R. 30.1. Thus, it is the responsibility of appellant's counsel to prepare an appendix of record excerpts, *id*., and appellant's counsel must ensure the appendix is "sufficient for considering and deciding the issues on appeal." 10th Cir. R. 30.1(A)(1).

Our rules also require the appellant's appendix to contain "all portions of the transcript necessary to give the court a complete and accurate record of the proceedings related to the issues on appeal." 10th Cir. R. 10.1(A)(1); *see also*

-7-

*Morrison Knudsen Corp. v. Fireman's Fund Ins. Co.*, 175 F.3d 1221, 1237 n.15 (10th Cir. 1999) (noting the requirement that the appendix contain all relevant portions of the transcript, and that merely ordering the transcript does not fulfill appellant's duty). Additionally, when an appellant challenges the district court's jury instructions, the appendix must include "*all* jury instructions . . . as well as proposed instructions that were refused." 10th Cir. R. 10.3(C)(6) (emphasis added); *see also* 10th Cir. R. 30.1(A)(1) ("The requirements of Rule 10.3 for the contents of a record on appeal apply to appellant's appendix."). The onus is entirely on the appellant's counsel to heed these rules: "The court need not remedy any failure of counsel to provide an adequate appendix." 10th Cir. R. 30.1(A)(3); *see also Rios v. Bigler*, 67 F.3d 1543, 1553 (10th Cir. 1995) ("It is not this court's burden to hunt down the pertinent materials. Rather, it is Plaintiff's responsibility as the appellant to provide us with a proper record on appeal.").

The appellant's appendix in this case was deficient. It contains only some of the proposed and actual jury instructions, and it does not include any portion of the transcript of the jury instruction conference. It is unclear, based upon the materials provided by Arnold's counsel, how the district court resolved Arnold's objections below. Nonetheless, while of borderline utility, what we have on appeal is sufficient to glean that the district court did in fact reject the excessive force instruction tendered by Arnold. Thus, although the record barely supports the claim on appeal, we are satisfied that we need not dismiss it despite these

-8-

deficiencies. *But see Allan v. Springville City*, 388 F.3d 1331 (10th Cir. 2004); *King v. Unocal Corp.*, 58 F.3d 586 (10th Cir. 1995) (dismissing appeal for deficient appendix).

The rules governing the record on appeal and the appellant's appendix are crucial. Counsel walks a dangerous line by failing to comply with the rules' requirements. An adequate record is our only link to the proceedings below; without it, there is nothing to review but the parties' unsupported arguments.

### B.     The Jury Instructions

We proceed to the merits of Arnold's jury instruction claim. Arnold contends her § 1983 claim should have been governed by a Fourth Amendment excessive force standard, rather than the substantive due process shocks the conscience standard.

Litigants are entitled to an instruction on their theory of the case if they submit sufficient evidence in support of that theory. *Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1019–20 (10th Cir. 2006). In this context, our review is de novo. *Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 729 (10th Cir. 2000). The district court's evaluation of the sufficiency of the evidence is entitled to at least some deference, however, and we review the district court's analysis under the familiar abuse of discretion standard. *See United States v. Pinson*, 542 F.3d 822, 831 (10th Cir. 2008) ("A defendant is entitled to an instruction on his theory of the case if the instruction is a correct statement of the

law, and if he has offered sufficient evidence for the jury to find in his favor. We review a district judge's refusal to issue a requested instruction under this standard for abuse of discretion."), *cert. denied*, 129 S. Ct. 1369 (2009).

To prevail on a claim for excessive force under the Fourth Amendment, a plaintiff must show he or she was "seized" by a government actor. The Supreme Court has defined a "seizure" in this context as "a governmental termination of freedom of movement *through means intentionally applied*." *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (internal quotation marks omitted) (emphasis in original); *see also Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control.").[2] Thus, if there was sufficient evidence such that the jury could have found Curtis intended to throw Arnold down the stairs—and therefore seized Arnold under the Fourth Amendment in his capacity as a law enforcement officer—the jury should have received a Fourth Amendment excessive force instruction. *See Albright v. Oliver*, 510 U.S. 266, 288 n.2 (1994) (Souter, J., concurring) ("[A]ll claims of excessive force by law enforcement officials in the course of a 'seizure' should be analyzed under the Fourth Amendment's 'reasonableness' standard."); *see also Murphy Oil*, 438 F.3d at 1019 ("[A] party is

---

[2] Neither party disputes that Arnold lost her freedom of movement when she fell—or was thrown—down the movie theater's stairs. At that point, Arnold ceased attempting to interfere with the arrest, could not regain her footing, and had to be helped to her feet. *See* Aplt. Br. at 10; Aple. Br. at 10.

entitled to an instruction on her theory of the case if . . . she has submitted sufficient evidence for the jury to find in her favor.").

Curtis disagrees with this analysis and argues Arnold's jury instruction claim is foreclosed by our decision in *Clark v. Edmunds*, 513 F.3d 1219 (10th Cir. 2008). In *Clark*, we held that when a plaintiff is "not actually seized by the police," the plaintiff's § 1983 claim cannot be based on a Fourth Amendment excessive force theory and instead must be governed by Fourteenth Amendment substantive due process standards. *Id*. at 1222. The defendant-police officer in *Clark* accidentally pushed the plaintiff off her feet in the course of seizing a third party, causing the plaintiff various injuries. *Id*. at 1221. Because the officer "did not intend to acquire physical control over [the plaintiff]," and therefore did not seize her, we held that the plaintiff could state a triable claim only for a violation of her substantive due process rights. She had no claim under the Fourth Amendment. *Id*. at 1222.

Like the officer in *Clark*, Curtis also claims he accidentally pushed a bystander (Arnold) off her feet in the course of seizing a third party (Castillo). If we accept Curtis's narrative, it appears *Clark* would dictate that substantive due process standards govern this case, and the district court's jury instructions therefore were proper.

But *Clark*, unlike this case, was decided in district court on summary judgment, and the plaintiff there "agree[d] with the district court's determination

that her claim does not fall under the Fourth Amendment because she was *not actually seized.*" *Clark*, 513 F.3d at 1222 (emphasis added). Here, however, whether Curtis's actions were intentional—i.e., whether Arnold was seized—was a critical factual issue at trial, and Arnold repeatedly insisted a seizure *did* occur. Furthermore, both parties called a number of witnesses to support their particular version of the events leading to Arnold's fall down the theater stairs. *Clark*, therefore, does not govern this case.

Our review of the record convinces us the district court should have credited Arnold's Fourth Amendment theory. If, as Arnold and her witnesses asserted at trial, Curtis "grabbed [her] by both of her arms, turned her around, pulled her[,] and threw her down the stairs," Aplt. Br. at 9, Curtis's actions would have satisfied the Supreme Court's definition of a "seizure." Indeed, it is "enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to [stop the person]." *Brower*, 489 U.S. at 599; *see also Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187–88 (10th Cir. 2001) (holding that the plaintiffs had been seized when the police threatened them at gunpoint, although only one of them was eventually arrested).

Of course, the jury was not required to credit Arnold's testimony and easily could have found Curtis's narrative more convincing. But ultimately it was the jury's job to determine who was telling the truth on whether Curtis intentionally grabbed Arnold and threw her down the stairs. *Miller v. Eby Realty Group LLC*,

396 F.3d 1105, 1112 (10th Cir. 2005) ("One of the primary roles of the factfinder is to assess credibility in deciding how to view the evidence."). When the court assumed Curtis's actions were unintentional for purposes of the jury instructions, it invaded the province of the jury and exceeded the bounds of its permissible choice. *See Hawkins v. City of Farmington*, 189 F.3d 695, 701–02 (8th Cir. 1999) ("[S]ufficient evidence was presented from which a jury could have determined that the police officer terminated Hawkins' freedom of movement through means intentionally applied.").

Furthermore, we are convinced that the district court's instructional error was not harmless. The test for excessive force under the Fourth Amendment is significantly different than the shocks the conscience standard. *Compare Lewis*, 523 U.S. at 846 ("[O]nly the most egregious official conduct can be said to be [a violation of substantive due process].") *with Graham v. Connor*, 490 U.S. 386, 397 (1989) (noting that in Fourth Amendment excessive force cases, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation"). By failing to contain the more easily satisfied Fourth Amendment standard, the jury instructions did not "fairly guide" the jury in its deliberations. *See Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1132 (10th Cir. 2009). It is entirely possible that the jury could have found Curtis's actions "objectively unreasonable" and yet not conscience-shocking. The district court's instructions

therefore prejudiced Arnold and we must reverse. *See Bangert Bros. Constr. Co. v. Kiewit W. Co.*, 310 F.3d 1278, 1290 (10th Cir. 2002) (noting that an instructional error is grounds for reversal if the error prejudices a party).

As we noted in the opinion denying Curtis's prior appeal, "there is no question that the Fourth Amendment right to be free from excessive force clearly embrace[s] the right of an innocent citizen to attend a movie without being seized by a self-identified law enforcement officer and thrown down a staircase." *Arnold*, 243 F. App'x at 412. On retrial, assuming the plaintiff submits sufficient evidence, the district court should "submit to [the] jury the questions of whether, under the facts and circumstances of this case, a seizure occurred and whether the seizure was reasonable under the standard established by the Supreme Court." *Hawkins*, 189 F.3d at 702.

## III. Conclusion

For the foregoing reasons, the judgment of the district court is REVERSED. The case is REMANDED for a new trial and for additional proceedings consistent with this opinion.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

-14-