**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 30, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BERTINA RAE OLSETH,

        Plaintiff-Appellant,

v.

MATTHEW D. LARSON, an
individual,

        Defendant-Appellee.

No. 10-4015
(D.C. No. 2:02-CV-01122-CW)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **BALDOCK**, and **HOLMES**, Circuit Judges.

---

      Bertina Rae Olseth appeals from an order granting summary judgment to

Salt Lake City police officer Matthew D. Larson on qualified immunity grounds

on her civil rights complaint brought pursuant to 42 U.S.C. § 1983. Because we

conclude that Officer Larson was entitled to qualified immunity, we affirm the

judgment of the district court.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

On May 15, 1998, Officer Larson and another Salt Lake City police officer, Officer Mark Schuman, arrested Ms. Olseth on suspicion of buying cocaine. Officer Larson removed Ms. Olseth from a van in which she was a passenger, handcuffed her with her hands behind her back, and placed her in the front passenger seat of his police car. He left the car's engine running while he spoke briefly to the van's driver, who was sitting on the bumper of the police car.

As he came around the front of the car to enter the driver's side door, Officer Larson saw Ms. Olseth slide over to the driver's seat. What happened next is in dispute. Officer Larson averred that Ms. Olseth brought her still-handcuffed hands to the side, where the vehicle's gearshift was. He stated he saw her looking at him as she manipulated the gearshift. Ms. Olseth maintains, however, that she scooted into the driver's seat to talk to Officer Larson, then lost her balance and fell against the steering wheel and gearshift.

The police vehicle lurched backwards.[1] Officer Larson yelled for Ms. Olseth to stop. He ran in pursuit of the vehicle, which was accelerating in reverse, and threw his collapsible baton at it, cracking or breaking the windshield. A witness later estimated the vehicle was moving backwards at five to ten miles

---

[1] Officer Schuman stated that he heard the vehicle's tires spin backwards. David G. Lord, an expert witness for Ms. Olseth, testified that given the co-efficient of friction and the vehicle's maximum acceleration capability, Officer Schuman could not have heard the tires squeal. This does not amount to a material fact dispute that would preclude summary judgment.

per hour. Officers Larson and Schuman continued to chase the vehicle, yelling at Ms. Olseth to stop.

Ms. Olseth acknowledges that the car rolled backwards, but she contends it was only moving slowly. When Officer Larson's baton hit the windshield, she stated, she lost her balance and fell against the gearshift, knocking it into "drive." She stated that she did not and could not have touched the accelerator or brake pedals. During the incident, she was facing backwards, toward the rear of the car.

The officers heard the noise of changing gears. The car shifted from reverse into drive and moved forward toward them. Officer Larson was closer to the car than Officer Schuman. Nearby non-police witnesses testified that it appeared Officer Larson was in danger of being run over by the police car. Officer Larson and Officer Schuman also stated they believed that he was in danger of being run over.

In her affidavit, Ms. Olseth does not deny that she was in the car's driver's seat, having put it in gear, or that the car was moving. Moreover, she admits she could not see Officer Larson during the events that followed.

Officer Larson drew his pistol and fired four shots through the windshield of the police car. Three of the bullets hit Ms. Olseth, in the back and arm, wounding her. Officer Larson stated that the car slowed after he fired the shots, so that he was able to catch up with it. He opened the driver's side door and

pressed the brake pedal with his foot. He then removed Ms. Olseth from the vehicle and placed her on the pavement.[2]

Ms. Olseth hired two experts, each of whom submitted an affidavit in opposition to Officer Larson's motion for summary judgment. David G. Lord identified himself an expert in the field of accident reconstruction. He testified that given all the circumstances, in his opinion, the car must have been traveling less than five miles per hour during the incident.

Charles Hinson, who claimed expertise in the field of ballistics, submitted an affidavit detailing his conclusions based on the investigation of the shooting conducted by the Salt Lake City Police Department. The police investigator used the "dowel" method to determine the path of the bullets. Based on the path of the bullets disclosed by this methodology, Mr. Hinson concluded that (1) "Officer Larson was taking careful aim with each shot," Aplt. App. at 149; (2) by the time he fired one of the shots, "bullet A," he was "extremely close to the windshield of the car" but "not in the path of the car" and could see Ms. Olseth and know that he was shooting her in the back, *id.* at 151-52; (3) Officer Larson actually moved *toward* the car as he fired, and it was unreasonable for him to be in fear that he would be hit by the car; (4) Officer Larson was not in the path of the car when he

_____

[2] Ms. Olseth stated that Officer Larson "threw [her] on the pavement." Aplt. App. at 169. Any difference in characterization between "placing" and "throwing" is not a material issue of fact that would require reversal of summary judgment.

fired the shots; and (5) the close pattern of the shots was consistent with a speed of zero to five miles per hour.

As a result of the incident, Ms. Olseth was criminally charged with aggravated assault by a prisoner on Officer Larson; aggravated assault by a prisoner on Officer Schuman; unlawful possession of a controlled substance; and escape. Notwithstanding her testimony at her criminal trial that she did not intend to operate the motor vehicle or to escape from the officers, a jury convicted her on the escape count. But it deadlocked on the count of aggravated assault on Officer Larson, and acquitted her of the other two counts.

## ANALYSIS

### 1. Summary Judgment Standard--Qualified Immunity

In general, we review the district court's grant of summary judgment de novo, considering all evidence in the light most favorable to the nonmoving party. *Clark v. Edmunds*, 513 F.3d 1219, 1221-22 (10th Cir. 2008). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is "material" if it could affect the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a defendant moves for summary judgment and argues he is entitled to qualified immunity, however, our review takes a slightly different course. In the qualified immunity context, the burden shifts to plaintiff to establish that the

defendant violated a constitutional right, and that the constitutional right was clearly established at that time. *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009). Only if plaintiff has made such a showing will the defendant assume the normal burden of showing that there are no disputed material facts and that he is entitled to judgment as a matter of law. *Clark*, 513 F.3d at 1222. In resolving a government official's claim of qualified immunity, we need not determine whether the facts alleged or shown by the plaintiff make out a claim for the violation of a constitutional right. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Where judicial economy or other concerns dictate, we may instead begin with the question of whether the right asserted is clearly established. *See id.* In this case, we affirm the district court's conclusion that even if Ms. Olseth demonstrated a genuine issue of material fact concerning whether her constitutional rights were violated, Officer Larson was entitled to qualified immunity because his actions did not violated clearly-established law.

### 2. Excessive Force

An officer using force in the course of a seizure of a citizen is entitled to qualified immunity unless the level of force used violated clearly-established Fourth Amendment law. *See Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . of a free citizen should be analyzed under the Fourth

-6-

Amendment and its 'reasonableness' standard . . . .") "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "If the law at [the time of the officer's conduct] did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Id.*

Ms. Olseth has failed to point us to clearly-established law, in effect at the time Officer Larson shot Ms. Olseth, that would have informed him that his actions were illegal. Officer Larson shot her on May 15, 1998. In *Brosseau*, the Supreme Court surveyed the law as it existed on February 21, 1999, a date roughly contemporaneous to but actually subsequent to Officer Larson's actions. *See id.* at 200, n.4. Although the facts in *Brosseau* differed in some particulars from those of this case, the Court extracted a general principle from existing law at that time that there is generally "no Fourth Amendment violation when an officer shot a fleeing suspect who presented a risk to others." *Id.* at 200.

Moving away in a car she admittedly could not control, Ms. Olseth represented a significant threat to the officers and others who might be hit by the car. Even if Officer Larson managed to side-step the car by the time he fired, as Ms. Olseth's experts opine, he would still have had to consider the danger to

others. He did not act unreasonably in assessing that danger as sufficiently serious to require him to shoot in an attempt to stop the car.

Ms. Olseth contends that she was not attempting to elude the officers. But a jury convicted her beyond a reasonable doubt of attempting to escape from official custody. Officer Larson could reasonably have concluded that Ms. Olseth was attempting to escape in the patrol car.

Finally, Officer Larson was not required to find a less forceful means of stopping the vehicle. So long as an officer's conduct is reasonable, he does not have to use the least restrictive means to extinguish an immediate threat to himself and the public. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005).

## CONCLUSION

Officer Larson's actions did not violate clearly-established law. The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

-8-