**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

**December 14, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

EARNEST JOE FIELDS,

    Plaintiff - Appellant,

v.

CITY OF TULSA, OKLAHOMA; LUCAS
TEMPLE, Officer; CHERISH COMFORT,
Officer,

    Defendants - Appellees.

No. 23-5001
(D.C. No. 4:21-CV-00179-CVE-SH)
(N.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.
_____

## I.  Background

Tameko Warren dialed 911 from the parking lot of a QuikTrip convenience store in Tulsa reporting that her soon-to-be ex-husband, Earnest Fields, was deflating her tires.  She added that he was armed with a hammer, which he had just used to tap on her car window.  When officers Cherish Comfort, Jill Sallee,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and Lucas Temple arrived at the scene, Ms. Warren was still in her parked car, while Mr. Fields had gone inside the convenience store.

The officers' interactions with Mr. Fields were captured on their body cameras. Officer Temple entered the convenience store and instructed Mr. Fields to stay inside while he and Officer Sallee questioned Ms. Warren in the parking lot. Disregarding Officer Comfort's instruction to stay inside the store, Mr. Fields strode towards the exit, stating that he intended to refuel his truck before answering any questions. Officer Comfort replied that Mr. Fields was detained, and Officers Comfort and Temple both reiterated that he could not go outside to refuel his car. Undeterred, Mr. Fields slammed some of his belongings onto the store's counter and stormed out the door. Officer Comfort tackled him from behind and handcuffed him.

After further investigation, no charges were filed against Mr. Fields. Mr. Fields then sued the Tulsa Police Department and Officers Comfort and Temple for violation of his Fourth Amendment rights against excessive use of force and wrongful arrest. Mr. Fields appealed from the district court's order granting summary judgment for the defendants based on qualified immunity.

Since Mr. Fields has not produced any facts showing that the officers violated his clearly established rights, we affirm.

## II.  Analysis

Mr. Fields contends that the district court erred in dismissing his false arrest and excessive force claims at summary judgment. First, he argues that the

officers lacked sufficient justification to detain him.  Additionally, he argues that tackling and restraining him was an excessive use of force.

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In applying this standard, we view the facts and any reasonable inferences in the light most favorable to the non-moving party."  *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022).

"A § 1983 defendant's assertion of qualified immunity is an affirmative defense that creates a presumption that the defendant is immune from suit."  *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (internal quotation marks and brackets omitted). "To overcome this presumption, the plaintiff must show (1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct."  *Id.*  "A right is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains."  *Id.* (internal quotation marks omitted).

### A. False Arrest

"An officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause."  *Cortez*

*v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc) (internal quotation marks omitted). "The reasonable suspicion necessary to justify such a stop is dependent upon both the content of information possessed by police and its degree of reliability." *Navarette v. California*, 572 U.S. 393, 397 (2014) (internal quotations omitted). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* (internal citations and quotation marks omitted).

Separately, a "warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018) (Thomas, J.). "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* at 56-57 (internal quotation marks omitted).

Here, the undisputed material facts establish that an investigative detention was permissible because the officers had reasonable suspicion to believe that Mr. Fields may have violated Oklahoma's domestic abuse and domestic assault statutes. Oklahoma law prohibits "domestic abuse," which it defines as "any act of physical harm or the threat of imminent physical harm which is committed by an adult . . . against another adult . . .who is currently or was previously an

4

intimate partner or family or household member." Okla. Stat. tit. 22 § 60.1(2).

A court must determine "whether, based on the objective facts, the threat is real, not merely perceived." *Curry v. Streater*, 213 P.3d 550, 556 (Okla. 2009). In doing so, it "may consider the circumstances and environment at the time of the alleged threat and the parties' (1) history, (2) relationship, (3) age, (4) intelligence, (5) health, (6) physical strength, and (7) other similar evidence that a threat is real and is likely be executed." *Id.* Ms. Warren's allegations against Mr. Fields were sufficient for the officers to believe that Mr. Fields had threatened her. She had informed the police that they were going through a divorce, that he had approached her car before dawn in a parking lot, and that he had wielded a hammer against her. Even if these allegations would be insufficient to convict Mr. Fields of a crime, they were sufficient, at a minimum, to create reasonable suspicion.

> In addition, Oklahoma's domestic assault statute provides that
>
> [a]ny person who, with intent to do bodily harm and without justifiable or excusable cause, commits any assault, battery, or assault and battery upon an intimate partner . . . with any sharp or dangerous weapon . . . is guilty of domestic assault or domestic assault and battery with a dangerous weapon which shall be a felony.

Okla. Stat. tit. 21 § 644(D)(1). Oklahoma courts interpret "assault" to mean "[a]n attempt or offer to beat another without touching him; as if one lifts up his cane or his fist in a threatening manner at another; or strikes at him, but misses him." *Minnix v. State*, 282 P.2d 772, 775 (Okla. Crim. App. 1955). "The use of a dangerous weapon is what distinguishes the crime of an assault with a dangerous weapon with intent to do bodily

harm from a simple assault.  A dangerous weapon is one likely to produce death or great bodily injury by the use made of it." *Wilcox v. State*, 166 P. 74, 75 (Okla. Crim. App. 1917).  Ms. Warren's 911 call reporting that Mr. Fields had hit her car window with a hammer, deflated her tires, and was blocking her was sufficient to give the officers reasonable suspicion to believe that Mr. Fields may have committed domestic assault with a dangerous weapon.

In addition to the reasonableness of the investigative detention, Mr. Fields's failure to cooperate with the officers provided them with probable cause to suspect that he had violated Oklahoma's obstruction of justice statute.  Under Oklahoma law, "[e]very person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his or her office, is guilty of a misdemeanor."  Okla. Stat. tit. 21 § 540.  The officers asked Mr. Fields to remain in the convenience store so that they could question Ms. Warren, his alleged victim, in the parking lot.  When Mr. Fields disobeyed these orders and instead insisted upon going to the parking lot, the officers had probable cause to believe that he intended to obstruct their investigation.  First, "flight can constitute obstruction of an officer." *United States v. Sanchez*, 555 F.3d 910, 919 (10th Cir. 2009).  Mr. Fields knew that he was the target of an investigation, and disobeyed orders to remain in the store.  In addition, Mr. Fields's presence in the parking lot, coupled with his demonstrated refusal to abide the officers' instructions, could have disrupted the questioning of Ms. Warren.

6

In sum, the district court did not err in granting summary judgment on the false arrest claim.  The officers were justified in conducting an investigative detention and a warrantless arrest.

### B. Excessive Force

Mr. Fields also contends the officers used excessive force when they tackled him.

"The precise question asked in an excessive force case is 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The so-called *Graham* factors relevant to this inquiry include "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  In addition to the *Graham* factors, we have looked at other indicia of reasonableness in evaluating excessive force claims.  For example, we have held that courts may also consider the likelihood of resistance by third parties when evaluating excessive use of force. *Estate of Redd v. Love*, 848 F.3d 899, 907-908 (10th Cir. 2017).

The *Graham* factors each weigh in favor of use of force in this situation. "[T]he first *Graham* factor weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent."  *Vette v.*

7

*K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021).  The officers were investigating a report that Mr. Fields had threatened his soon-to-be ex-wife with a hammer while letting air out of her car tires.

The second factor weighs in favor of the use of force because a reasonable officer could believe that Mr. Fields posed a threat.  The officers were investigating a domestic violence allegation against Mr. Fields, and they believed that he was armed with a hammer.  Instead of complying with their instructions, Mr. Fields reacted aggressively and combatively.  As Mr. Fields's behavior became more hostile throughout the encounter, the officers were reasonable in perceiving a threat.

The third factor weighs in favor of use of force because Mr. Fields violated the officers' instructions and walked out the door toward his truck—a move that the officers could reasonably have construed as an attempt to flee.

Resisting this analysis, Mr. Fields argues that "[t]here was never any evidence, or allegation, that [he] had been violent, verbally threatened Ms. Warren, hurt her, or attempted to hurt her."  Aplt. Br. at 21.  But Ms. Warren's 911 call reported that Mr. Fields had threatened her by hitting her car window with a hammer and deflated her tires.  A reasonable person could find such conduct at the least alarming, if not outright threatening.  Reasonable officers would be entitled to assume an allegation of threatened violence based on what they knew at the time.

Mr. Fields argues that the second factor weighs in his favor since he "posed no immediate threat to Comfort, Temple, or *anyone* else, when Comfort forcefully took him to the ground."  *Id.* at 24.  But the uncontroverted evidence in this case shows that the

8

officers were investigating a domestic assault claim, that they believed Mr. Fields to be armed, and that Mr. Fields reacted aggressively to their investigation. The officers were reasonable, in those circumstances, to perceive Mr. Fields as a threat.

Mr. Fields argues that the third factor weighs in his favor since "[h]ad he intended to flee, Mr. Fields would not have left his belongings, including his keys, on the QT counter." *Id.* at 26. Even if we view this fact in the light most favorable to him, it remains undisputed that Mr. Fields knew that he was the target of an investigation, yet disobeyed orders from the officers to stay indoors and darted toward his car. A reasonable officer could interpret Mr. Fields's behavior as an attempt at flight, notwithstanding his decision to leave some belongings on the store counter. The officers' decision to retain him was justifiable and proportionate considering this risk.

Even if we were to conclude the facts precluded summary judgment on the excessive force claim, that right was not clearly established. Since the officers enjoy qualified immunity absent the clearly-established violation of a constitutional right, Mr. Fields bears the burden not only of showing that they violated his right, but that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). He must point to a Supreme Court or Tenth Circuit opinion—or "the clearly established weight of authority from other courts"—holding that use of force is excessive in analogous circumstances. *Id.* He does not do so.

9

Mr. Fields points to cases showing that force is unjustified in the following circumstances, none of which is sufficiently similar to his case: (1) where nonviolent misdemeanants did not attempt to flee, s*ee Morris v. Noe*, 672 F.3d 1185, 1198 (10th Cir. 2012), and *Cavanaugh v. Woods Cross City*, 625 F.3d 661 (10th Cir. 2010); (2) where force was applied without warning, *see Casey v. City of Fed. Heights*, 509 F.3d 1278, 1283-1285 (10th Cir. 2007); (3) where force was applied against individuals who were in handcuffs or otherwise subdued, *see Estate of Booker v. Gomez*, 745 F.3d 405, 424 (10th Cir. 2014), *and Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016); and (4) where the record did not show conclusively that the plaintiff had resisted. *Bridges v. Yeager*, 352 F. App'x 255, 259 (10th Cir.).

Since he cannot overcome his burden of showing clearly-established law in support of his excessive force claim, the district court did not err in finding the officers were entitled to qualified immunity.

### C. Municipal Liability

Finally, Mr. Fields claims that the City of Tulsa is liable for the officers' constitutional violations.

"Local governing bodies . . . can be sued directly under § 1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). "[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a

custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-691.  They may not be "held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Id.* at 691.  Unlike their employees, municipalities do not enjoy qualified immunity.  *Owen v. City of Independence*, 445 U.S. 622, 638 (1980).

Mr. Fields has not developed an argument on appeal to find Tulsa liable under *Monell*.  In its response brief, Tulsa argues that Mr. Fields has not shown that his damages were caused by an official municipal policy or custom.  Aple. Br. at 25-28.  Mr. Fields did not file a reply brief to dispute the merits of that contention.  We conclude that summary judgment in favor of Tulsa is warranted because there remains no material factual dispute as to Tulsa's liability.

## III.  Conclusion

We affirm the district court's grant of summary judgment in favor of the defendants.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge