FILED
United States Court of Appeals
Tenth Circuit

July 9, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

OLIVER A. ROJAS,

     Plaintiff - Appellant,

     v.

KENNETH A. ANDERSON;
NICHOLAS WILSON, in their
individual and official capacities,

     Defendants - Appellees.

No. 12-1283

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:11-CV-01200-DME-KLM)

---

Earl S. Wylder of Irwin & Boesen, P.C., Denver, Colorado (William P. Buckley
of The Law Firm of Leonard Chesler, P.C., Denver Colorado, with him on the
brief) for Plaintiff - Appellant.

Gillian M. Fahlsing of Senter Goldfarb & Rice, L.L.C., Denver, Colorado, for
Defendants - Appellees.

---

Before **HARTZ**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

     Plaintiff Oliver Rojas appeals the district court's order granting summary

judgment to Defendants on his 42 U.S.C. § 1983 claims.

Plaintiff was arrested after Defendant Officer Kenneth Anderson stopped Plaintiff, who was visibly intoxicated, and his two cousins as they were struggling to enter a house at three o'clock in the morning. Upon being questioned by Officer Anderson, Plaintiff and his cousins told Officer Anderson that Plaintiff lived at the house, and one of the cousins allegedly showed Officer Anderson Plaintiff's driver's license, which listed the house as Plaintiff's address. Despite these representations, Officer Anderson decided to take Plaintiff to a detoxification facility based on the fact that Plaintiff "was clearly intoxicated and barely able to stand." (Appellee's Resp. Br. at 17.) To do so, he grabbed Plaintiff's arm and attempted to walk Plaintiff off of the front porch. Around that time, a woman later identified as Plaintiff's mother opened the door. She initially spoke to Plaintiff's cousins in Spanish but then "said in English, 'That's my nephew, that's my son, they live here.'" (R. at 101.)

During this exchange, Officer Anderson maintained his hold on Plaintiff and "kept pulling on [his] arm and telling him not to go inside of the house." (R. at 57.) According to Officer Anderson, Plaintiff refused to comply "and, instead, he lunged back and forth" in an effort to free his arm, which Officer Anderson perceived as an attempt by Plaintiff to hit him. (R. at 57.) Plaintiff and his cousins, however, agree that Plaintiff "never swung at [Officer Anderson]" (R. at 105), did not "attempt to hit Officer Anderson with his fist," and did not "attempt to strike Officer Anderson in any other manner" (R. at 190, 191; *see also* R. at

-2-

189). Another officer who arrived on scene as back-up likewise did not see Plaintiff take a swing at Officer Anderson.

As a result of his efforts, Plaintiff ultimately broke free from Officer Anderson's grasp, at which point he ran into the house. Officer Anderson followed Plaintiff and, after a struggle and with the assistance of the two other officers on scene, arrested him for attempting to assault a peace officer. Plaintiff was then taken outside and placed in a patrol car, where he continued to resist, forcefully kicking at the car window. In response, Defendants removed Plaintiff, who was at this point handcuffed, from the patrol car to better secure him. According to Plaintiff, after he had been removed from the patrol car and his feet tied, Defendants picked him up and dropped him face-first onto the asphalt, causing him to split open his chin and fracture his mandible.

Following this incident, Plaintiff filed a complaint under § 1983 against Defendants asserting claims of unlawful seizure and excessive force.[1] The district court granted summary judgment to Defendants based on qualified immunity, concluding Officer Anderson had probable cause to arrest Plaintiff and, in light of the exigent circumstances surrounding the event, his warantless entry into Plaintiff's home was therefore justified. The district court further concluded that

---

[1] Plaintiff's complaint originally included additional claims asserted by two of his sisters and claims against another officer and the City of Northglenn. These claims were voluntarily dismissed before resolution of Defendants' motion for summary judgment.

Defendants' act of dropping Plaintiff did not violate the Fourth Amendment because it was reasonable for Defendants to pull Plaintiff out of the patrol car by his legs and to place him in a hobble restraint, even if they did so in a careless manner.[2]  Plaintiff appeals this decision, arguing summary judgment was inappropriate on both of his claims.[3]

"We review the district court's grant of summary judgment de novo, reviewing the evidence in the light most favorable to the nonmoving party." *Clark v. Edmunds*, 513 F.3d 1219, 1221-22 (10th Cir. 2008) (internal quotation

---

[2] The district court appears to have accepted Defendants' theory of Plaintiff's excessive force claim—that Plaintiff was accidentally injured as he was removed from the patrol car.  (R. at 210 ("The gravamen of Rojas's Fourth Amendment excessive force claim is that Defendants Anderson and Wilson used excessive force when they pulled him from the patrol car and Rojas's chin hit the pavement."), 212 n.4 ("Rojas does not allege that the Defendants intentionally slammed his head into the pavement.").).  Plaintiff did, however, offer testimony that Defendants intentionally dropped him *after* he was removed from the patrol car and *after* Defendants tied his feet.  (R. at 184-88 (Rojas Dep., cited in Pl.'s Resp. to Mot. for Summ. J., R. at 170).)

[3] As an initial matter, Defendants argue we lack jurisdiction to consider Plaintiff's appeal because Plaintiff's arguments are based on the district court's factual determinations, and we may review only the district court's legal conclusions.  Defendants' argument mistakenly relies on the limitation on our *interlocutory jurisdiction* over denials of qualified immunity.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1153-54 (10th Cir. 2008) ("[W]e have interlocutory jurisdiction over denials of qualified immunity at the summary judgment stage to the extent that they turn on an issue of law. . . . At this stage, however, we are not at liberty to review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." (internal quotation marks and brackets omitted)).  No such limitation applies to our review of final judgments granting qualified immunity, over which we of course have jurisdiction, 28 U.S.C. § 1291.

marks and brackets omitted).  "However, because qualified immunity is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial, we review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings."  *Id.* at 1222 (internal quotation marks omitted).  "When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a strict two-part test:  first, the plaintiff must show that the defendant's actions violated a constitutional or statutory right; second, the plaintiff must show that this right was clearly established at the time of the conduct at issue."  *Id.* (internal quotation marks omitted).  "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."  *Id.* (internal quotation marks omitted).

In response to Defendants' motion for summary judgment, Plaintiff made little, if any, attempt to meet his "heavy two-part burden," *Martinez v. Carr*, 479 F.3d 1292, 1294 (10th Cir. 2007) (internal quotation marks omitted).[4]  Rather,

---

[4] While Defendants' motion for summary judgment and briefing on appeal contain slightly more extensive discussions regarding the qualified immunity analysis, they did little to help us consider the issues of this case.  For instance, Defendants maintain that Officer Anderson had probable cause to arrest Plaintiff for an attempted assault on a peace officer because "it is undisputed that Rojas

(continued...)

with regard to his unlawful seizure claim, Plaintiff cursorily argued (1) Officer

Anderson had no need to take Plaintiff to a detoxification facility because he

could have easily determined that Plaintiff lived at the house; (2) Officer

Anderson's asserted concern for Plaintiff's safety and the safety of the residents

of the house "is absurd" (R. at 172); and (3) Officer Anderson "did not have

probable cause to arrest [him] for attempted assault on a peace officer, because an

attempted assault never occurred" (R. at 173).  Absent from Plaintiff's argument

is any discussion of how Officer Anderson's actions violated Plaintiff's

constitutional rights, any discussion of whether "the infringed right at issue was

---

[4](...continued)
'lunged back and forth' and that Anderson interpreted these movements as an attempt by Rojas to strike him."  (Appellee's Resp. Br. at 19.)  Defendants correctly assert that "[p]robable cause exists if the facts and circumstances within the arresting officer's knowledge . . . are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (internal quotation marks omitted).  However, this determination is made by "examin[ing] the events leading up to the arrest, and then decid[ing] whether these historical facts, *viewed from the standpoint of an objectively reasonable police officer*, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted) (emphasis added).  Officer Anderson's *subjective* interpretation of Plaintiff's actions is therefore irrelevant, and Defendants' repeated reliance on it is unpersuasive.  With respect to Plaintiff's excessive force claim, we note Defendants' continued refusal to acknowledge the possibility that Plaintiff's claim was based on Defendants' alleged conduct in *intentionally* dropping Plaintiff after he had been removed from the patrol car and his feet tied—a possibility that is clearly supported by the cited portions of Plaintiff's deposition testimony (*see* R. at 184-88 (Rojas Dep., cited in Pl.'s Resp. to Mot. for Summ. J., R. at 170)).

clearly established at the time of the allegedly unlawful activity," *Martinez*, 479

F.3d at 1295, or a single case citation to support such positions, *see Thomas v.*

*Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of

citing to us what he thinks constitutes clearly established law."). Without any

such argument, Defendants were entitled to qualified immunity. *See Martinez*,

479 F.3d at 1295 ("[T]he record must clearly demonstrate the plaintiff has

satisfied his heavy two-part burden; otherwise, the defendants are entitled to

qualified immunity." (internal quotation marks omitted)).

On appeal, Plaintiff faults the district court for ignoring "a genuine issue of

material fact as to whether [he] attempted to assault [Officer] Anderson."

(Appellant's Opening Br. at 10.) According to Plaintiff, the existence of a

genuine issue of fact on this matter requires reversal. What Plaintiff fails to

comprehend, however, is that it is "[i]f, *and only if*," he satisfies his two-part

burden[5] that Defendants "then bear the traditional burden of the movant for

---

[5] In determining whether a plaintiff has satisfied this initial burden, district courts are instructed to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion," which, "[i]n qualified immunity cases, . . . usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks and brackets omitted). It appears the district court failed to properly apply this standard. For instance, in resolving Plaintiff's unlawful seizure claim, the district court construed certain disputed material facts in the light most favorable to *Defendants* and disregarded other evidence in Plaintiff's favor. Specifically, the district court concluded "Rojas had refused to comply with Anderson's orders to produce identification." (R. at 209.) The record, however, reveals (1) Plaintiff

(continued...)

summary judgment—showing that there are no genuine issues of material fact and [they are] entitled to judgment as a matter of law." *Clark*, 513 F.3d at 1222 (internal quotation marks omitted) (emphasis added). Because Plaintiff failed to meet his burden on "the *legal* qualified immunity question," this traditional summary judgment burden never shifted back to Defendants. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1327 (10th Cir. 2009) (Holmes, J., concurring). Plaintiff's focus on appeal on a genuine issue of material fact is therefore misplaced.

We turn then to Plaintiff's excessive force claim. Plaintiff's response to

---

[5](...continued)
told Officer Anderson "that he lived there" (R. at 93); (2) one of Plaintiff's cousins handed Officer Anderson Plaintiff's driver's license, which listed the house as Plaintiff's address; and (3) upon opening the door to the house, Plaintiff's mother told Officer Anderson "'That's my nephew, that's my son, they live here'" (R. at 101).

Although we are troubled by the district court's deviation from the appropriate summary judgment standard of review, we are convinced that this error does not require reversal. As discussed above, Plaintiff made no attempt in his opposition to Defendants' motion for summary judgment to satisfy his two-part burden, under his version of the facts or otherwise. Indeed, the paucity of Plaintiff's responsive briefing undoubtedly contributed to the district court's misplaced reliance on Defendants' version of the facts and Defendants' characterization of Plaintiff's claims. And, although on appeal Plaintiff faults the district court for disregarding factual disputes, he again offers next to no argument that, when the facts are properly construed and his claims properly characterized, Defendants violated his clearly established constitutional rights. Accordingly, while we cannot endorse the reasoning given by the district court, we can hardly now fault the court for the conclusion it ultimately reached—that Defendants are entitled to qualified immunity. *See Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013).

Defendant's motion for summary judgment on this claim fares even worse. The entirety of his responsive argument on this point consists of two sentences: "We are not contending that the excessive force occurred in the house. Rather, we are contending that the excessive force occurred when Rojas was dropped on the street, his chin was cut and required seven sutures, and he suffered a fractured left mandible." (R. at 176.) This response does nothing to support Plaintiff's position that Defendants' alleged conduct constituted excessive force. Nor does it discuss whether Plaintiff's right to be free from such force was clearly established. Again, without any such argument, Defendants were entitled to qualified immunity. *See Martinez*, 479 F.3d at 1295.

We note that our independent review of the record suggests a case might well have been made that Defendants were not entitled to qualified immunity. That is, Plaintiff might well have been able to establish that Officer Anderson did not have probable cause to arrest him because "under the totality of the circumstances, a reasonable person would [not] believe that" Plaintiff had attempted to assault Officer Anderson, *United States v. Martin*, 613 F.3d 1295, 1302 (10th Cir. 2010) (internal quotation marks omitted), and Officer Anderson's warrantless seizure of Plaintiff inside his home was therefore unreasonable. He likewise might well have been able to establish that Defendants' conduct in (allegedly) intentionally dropping Plaintiff face-first on the asphalt after he had been removed from the patrol car constituted excessive force. And, for both of

his claims, Plaintiff might well have been able to satisfy us that Defendants' actions violated his clearly established rights. *See, e.g.*, *Tubbs v. Harrison*, 383 F. App'x 804, 807 (10th Cir. 2010) ("[T]he law is clearly established that a warrantless home entry must be . . . pursuant to clear evidence of probable cause . . . ."); *Dixon v. Richer*, 922 F.2d 1456, 1462-63 (10th Cir. 1991) (affirming denial of qualified immunity at summary judgment on the plaintiff's excessive force claim because the officers' conduct in kicking, beating, choking, and hitting the plaintiff with a flashlight after he had been frisked was "not objectively reasonable under the Fourth Amendment"). However, given the sparsity of Plaintiff's argument and his failure to point to any authority to support his claims, both here and in the district court, Plaintiff, "through his counsel, [has simply] failed to carry the burden assigned to him by law." *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013).

In light of Plaintiff's failure to adequately sustain his high burden, we have no choice but to affirm the grant of qualified immunity. As we recently explained, the fact that "clients like [Plaintiff] are usually bound by their lawyers' actions—or, as here, inactions," "[s]ometimes . . . means good cases are lost by bad lawyers, a lamentable cost of our legal system." *Id.* Indeed, "[o]ther remedies seek, if often all too imperfectly, to address this problem, including administrative sanctions . . . and malpractice claims." *Id.* Unfortunately, none of this allows us to reach a result different from the one reached by the district court.

-10-

Based on the foregoing analysis, the judgment of the district court is

**AFFIRMED**.