**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ANNA GUTIERREZ; PATSY FLORES,

    Plaintiffs - Appellants,

v.

LUNA COUNTY SHERIFF RAYMOND
COBOS, in his individual and official
capacity; LUNA COUNTY SHERIFF
DEPUTY GABRIEL MAYNES;
DEPUTY MIKE EBY; DEPUTY TRINI
GARCIA; DEPUTY JOSE OJEDA;
DEPUTY ISRAEL SAENZ, JR., in their
individual and official capacities; LUNA
COUNTY CENTRAL DISPATCH
DIRECTOR MIRNA GRADO and
DISPATCH EMPLOYEE LUHUANA
VILLALBA, IN THEIR INDIVIDUAL
AND OFFICIAL CAPACITIES; LUNA
COUNTY MANAGER  JOHN
SUTHERLAND, in his individual and
official capacity,

    Defendants - Appellees.

No. 15-2161

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 2:12-CV-00980-JCH-GBW)**

Rosanne Camunez, Camunez Law Firm, PC, Las Cruces, New Mexico, appearing for Appellants.

Blaine T. Mynatt, Holt Mynatt Martinez P.C., Las Cruces, New Mexico (Casey B. Fitch and Benjamin J. Young, Holt Mynatt Martinez P.C., Las Cruces, New Mexico; and Carolyn A. Wolf, Montgomery & Andrews P.A., Santa Fe, New Mexico, with him on the brief), appearing for Appellees.

---

Before **HARTZ, HOLMES,** and **MATHESON,** Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

Anna Gutierrez and her mother, Patsy Flores, ("Plaintiffs") appeal the district court's grant of summary judgment based on qualified immunity to Luna County New Mexico Sheriff's Deputy Gabriel Maynes on three of their claims brought under 42 U.S.C. § 1983: (1) excessive use of force, (2) unlawful entry, and (3) unlawful seizure. When Deputy Maynes asserted the qualified immunity defense, Plaintiffs needed to show (1) a violation of (2) clearly established federal law. The district court concluded they failed to do so. Indeed, on their excessive force claim, they did not even try. In this appeal, we conclude as to all three claims that Plaintiffs failed to carry their burden as to clearly established law and do not address the first element of the qualified immunity analysis. Plaintiffs also appeal the district court's denial of their motion for additional discovery under Federal Rule of Civil Procedure 56(d). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Factual History*[1]

On the night of July 4, 2009, Luna County Sheriff's Deputy Gabriel Maynes tried to pull over Anna Gutierrez after she ran a stop sign. Ms. Gutierrez drove on—speeding slightly—until she reached an apartment complex several blocks away.

Ms. Gutierrez parked, exited her truck, and ran toward an apartment. Deputy Maynes exited his car, and, without warning, fired his taser. One of the darts struck Ms. Gutierrez in the back. She reached the apartment door and pounded on it in an effort to get inside. Deputy Maynes caught up and began hitting, kicking, and tasing Ms. Gutierrez. Ms. Gutierrez did not passively submit. Aplt. App., Vol. 5 at 72-74.

Patsy Flores, Ms. Gutierrez's mother, opened the apartment door. Deputy Maynes pushed Ms. Gutierrez inside and continued to hit and tase her. Ms. Flores pleaded for Deputy Maynes to leave her daughter alone. Deputy Maynes tased Ms. Flores on her leg and threatened to arrest her.

Additional officers arrived at the apartment in response to Deputy Maynes's dispatch call. Deputy Maynes eventually handcuffed Ms. Gutierrez and escorted her out

---

[1] Because we are reviewing a grant of summary judgment, we recite the facts "in the light most favorable to the non-moving parties"—the Plaintiffs—and we "resolv[e] all factual disputes and reasonable inferences in their favor." *Cillo v. City of Greenwood Village*, 739 F.3d 451, 461 (10th Cir. 2013) (quotations omitted). Deputy Maynes's account is different, *see* Aplt. App., Vol. 4 at 14-22 (Affidavit of Gabriel Maynes), but, as he acknowledges, *see* Aplee. Br. at 3 n.6, we must accept Plaintiffs' version on summary judgment. Irrespective of the parties' factual disputes, our decision is based on Plaintiffs' failure to satisfy the clearly-established-law element of qualified immunity.

of the apartment to a police car.  During the encounter, Deputy Maynes tased Ms. Gutierrez nine or ten times.

Later that night at a hospital, a doctor surgically removed the taser dart from Ms. Gutierrez's back and cleared her for transport to jail.  Ms. Gutierrez sustained additional injuries, including two fractured ribs.

The State of New Mexico charged Ms. Gutierrez with several offenses, but the charges were later dismissed.

## B. *Procedural History*

Ms. Gutierrez and Ms. Flores sued Deputy Maynes and other state officials ("Defendants") in New Mexico state court.  Defendants removed this case to federal court in September 2012.  Plaintiffs filed an amended complaint, which alleged seven counts against nine state officials in both their individual and official capacities.  The district court dismissed the official-capacity claims against all Defendants and dismissed many of the individual-capacity claims.  Only three claims against Deputy Maynes in his individual capacity remain at issue.

In two separate motions, Deputy Maynes moved for summary judgment based on qualified immunity.  First, he moved for summary judgment on Count III, Plaintiffs' excessive force claim.  Before the court resolved the first motion, Deputy Maynes moved for summary judgment on Counts I and II, Plaintiffs' illegal entry and illegal seizure claims.

After they responded to Deputy Maynes's first motion but before they responded to his second, Plaintiffs moved under Federal Rule of Civil Procedure 56(d) for additional discovery.

The district court denied Plaintiffs' Rule 56(d) motion. In the same order, the court granted Deputy Maynes's first motion for summary judgment on the excessive force claims because Plaintiffs had failed to address the dispositive qualified immunity issue.

Although Plaintiffs argued against qualified immunity in their response to the second motion, the district court again granted summary judgment. It determined Plaintiffs, on their claims of unlawful entry into the apartment and unlawful seizure of Ms. Flores, had failed to show either a constitutional violation or a violation of clearly established law.

The district court entered judgment for Defendants, and Plaintiffs filed a timely notice of appeal. *See* Fed. R. App. P. 4(a)(1)(A).

## II. **DISCUSSION**

### A. *Legal Background*

#### 1. **Section 1983 and Qualified Immunity**

Section 1983 of Title 42 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (ellipsis in original) (quotations and citation omitted). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments . . . .'" *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 744 (2011)).

Once an individual defendant asserts qualified immunity, "the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Estate of Booker*, 745 F.3d at 411 (quotations omitted).

We may resolve a case on the second prong alone if the plaintiff fails to show a right was clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Lynch v. Barrett*, 703 F.3d 1153, 1159 (10th Cir. 2013) ("[W]e are permitted to exercise our sound discretion in deciding whether to bypass the first question and proceed directly to the second." (quoting *Pearson*, 555 U.S. at 236-43)).

"In this circuit, to show that a right is clearly established, the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight

- 6 -

of authority from other courts must have found the law to be as the plaintiff maintains." *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) (quotations omitted). A plaintiff need not show "the very act in question previously was held unlawful in order to establish an absence of qualified immunity." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (quotations omitted). But "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it,' meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" *Sheehan*, 135 S. Ct. at 1774 (alterations and ellipsis in original) (citation omitted) (quoting *al–Kidd*, 563 U.S. at 741).

2. **Standard of Review**

We review summary judgment de novo, applying the same legal standard as the district court. *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012) (quotations omitted).

When a defendant moves for summary judgment based on qualified immunity, a plaintiff must show a violation of clearly established law because, "[u]nlike most affirmative defenses," the plaintiff "bear[s] the ultimate burden of persuasion" to

overcome qualified immunity. *Estate of Booker*, 745 F.3d at 411; *see Roska ex rel. Roska v. Sneddon*, 437 F.3d 964, 971 (10th Cir. 2006) ("When a defendant raises a claim of qualified immunity, the burden shifts to the plaintiff to show the defendant is not entitled to immunity.").

"Thus, at summary judgment, we must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Estate of Booker*, 745 F.3d at 411; *see also Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) ("If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity.").

## B. *Analysis*

We address the three claims on appeal in the order the district court decided them. On the Count III excessive force claim, Plaintiffs did not present any legal authority or legal argument to the district court in opposition to Deputy Maynes's motion for summary judgment based on qualified immunity. Although Plaintiffs' version of the facts underlying this claim is troubling, under our precedent the district court properly granted summary judgment because Plaintiffs did not meet their burden to show a constitutional violation based on clearly established law.

Unlike their response to the first motion for summary judgment where Plaintiffs failed to make any legal argument, their response to the second motion for summary judgment on Counts I and II cited legal authority and argued Deputy Maynes's conduct

violated their clearly established constitutional rights.  The district court considered

Plaintiffs' arguments but correctly concluded Deputy Maynes was entitled to summary

judgment based on qualified immunity.  We accordingly affirm.

1. **Excessive Force**

Plaintiffs' response to Deputy Maynes's first motion for summary judgment

argued various genuine disputes of material fact precluded summary judgment, but

Plaintiffs did not cite case law or make a legal argument to show how any infringement

of their constitutional rights violated clearly established law.

The district court concluded Plaintiffs failed to carry their burden and granted

Deputy Maynes summary judgment on Count III.  The court primarily relied on two

cases:  *Smith v. McCord*, 707 F.3d 1161 (10th Cir. 2013), and *Rojas v. Anderson*, 727

F.3d 1000 (10th Cir. 2013).  We agree that *Smith* and *Rojas* control the outcome on the

excessive force claim.

The plaintiff in *Smith*, a 75-year-old man, stepped outside the front door of his

house to find "an array of police officers" responding to a suicidal man with knives.  707

F.3d at 1162.  When Mr. Smith asked if something was wrong, an officer ordered him to

put his hands on a parked car.  *Id.*  Mr. Smith complied but retracted his hands because

the car's surface was too hot.  *Id.*  An officer kicked Mr. Smith's legs out from under

him, and then two more officers pressed their knees into him while he was on the ground.

*Id.*  Mr. Smith suffered injuries to his wrists, knees, elbows, and back.  *Id.*  He alleged

excessive force and sued under § 1983.  *Id.*  When the officer-defendants asserted

qualified immunity and moved for summary judgment, Mr. Smith argued only that material disputes of fact existed. *Id.* His response failed to mention the terms "qualified immunity" or "clearly established," and the district court granted summary judgment. *Id.*

We affirmed. Calling the case "an unfortunate tale of poor lawyering," we held the district court's decision to grant summary judgment was "unassailable" because the plaintiff "failed to carry the burden assigned him by law." *Id.* Mr. Smith did not argue against qualified immunity until his opening appellate brief asserted a violation of his clearly established rights in light of the Supreme Court's seminal excessive force case, *Graham v. Connor*, 490 U.S. 386 (1989). *See* Br. for Aplt., *Smith v. McCord*, 707 F.3d 1161 (10th Cir. 2013) (No. 12-2041), 2012 WL 3886572, at *15-16 (citing *Graham* on appeal and acknowledging the response to summary judgment in district court "did not cite directly to *Graham*"). We did not address Mr. Smith's *Graham*-based qualified immunity argument. Instead, we held that because Mr. Smith "didn't even try to meet" his qualified immunity burden in responding to the summary judgment motion in district court, we could not fault the district court for granting summary judgment. 707 F.3d at 1162.

*Rojas* is similar. There, a plaintiff sued under § 1983 for unlawful seizure and excessive force. 727 F.3d at 1002. In response to the defendants' motion for summary judgment on qualified immunity grounds, the plaintiff "made little, if any, attempt" to meet his legal burden. *Id.* at 1003. The plaintiff contested the facts, but he failed to provide legal analysis to show how the officers' actions violated clearly established law.

- 10 -

*Id.* at 1003-04. We once again upheld the district court's grant of summary judgment: "Without any such argument, [d]efendants were entitled to qualified immunity." *Id.* at 1004.

In this case, the district court determined that "Plaintiffs fail[ed] to cite or discuss any legal authority" and that "[t]hree mentions of the Fourth Amendment in Plaintiffs' response [were] insufficient" to carry their burden. Aplt. App., Vol. 5 at 83. "As in *Smith*, Plaintiffs' response d[id] not even mention the terms 'qualified immunity' or 'clearly established.'" *Id.* at 84.

Before this court, Plaintiffs argue in their opening brief that Deputy Maynes's use of force against Ms. Gutierrez[2] was excessive and violated clearly established law, specifically *Graham*. But they did not cite *Graham*—or any other case—in the district court or present any legal argument there. This poses a problem because Plaintiffs have done the same thing as Mr. Smith: no citation of legal authority in district court followed by appellate reliance on *Graham*. Plaintiffs acknowledge that their response in opposition to Deputy Maynes's summary judgment motion in district court "d[id] not contain the legal argument to establish that Plaintiffs' constitutional rights . . . were clearly established at the time in question." Aplt. Reply Br. at 7. As in *Smith*, we can

---

[2] The argument section of Plaintiffs' opening brief addresses excessive force only as to Ms. Gutierrez. They therefore have waived any opportunity for review of Ms. Flores's excessive force claim. *See Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006) ("[W]e have held that the failure to raise an issue in an opening brief waives that issue." (quotations omitted)).

hardly say the district court erred in concluding Plaintiffs failed to show the clearly-established-law element of qualified immunity. Indeed, the lack of legal authority indicates a failure to show the constitutional violation element as well.

In their reply brief, Plaintiffs make one last argument to try to salvage their excessive force claim. They contend that earlier in the litigation, when they responded to a motion to dismiss, they addressed qualified immunity with supporting legal authorities sufficient to stave off summary judgment. They ask us to "consider that such analysis and argument has been made in this case" and they further request that we "incorporate it into" Plaintiffs' response to Deputy Maynes's motion for summary judgment. Aplt. Reply Br. at 8. We deny this request for two reasons.

First, "a party waives issues and arguments raised for the first time in a reply brief." *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (quotations omitted). And second, even if Plaintiffs had made this request in their opening brief, they never alerted the district court nor Defendants in their response to the summary judgment motion that they wished to incorporate qualified immunity arguments made earlier in litigation, and they cannot incorporate by reference now, *see Fulghum v. Embarq Corp.*, 785 F.3d 395, 410 (10th Cir.) (explaining incorporation by reference of arguments made before the district court is "not acceptable appellate procedure"), *cert. denied*, 136 S. Ct. 537, 538 (2015).

As in *Smith* and *Rojas*, we conclude the district court properly granted summary judgment. "This isn't to say [Plaintiffs] lacked (or possessed) a meritorious case," but

- 12 -

"clients . . . are usually bound by their lawyers' actions—or, as here, inactions." *Smith*, 707 F.3d at 1162. Plaintiffs failed to carry their burden of showing that Deputy Maynes violated clearly established federal law because their counsel did not make any legal argument in the district court to rebut qualified immunity. We therefore affirm the district court's grant of summary judgment on Count III.[3]

2. **Unlawful Entry**

Count I of Plaintiffs' operative complaint alleged that Deputy Maynes's warrantless entry into the apartment violated the clearly established Fourth Amendment rights of both Ms. Gutierrez and Ms. Flores.

In granting Deputy Maynes's second motion for summary judgment on this claim, the district court concluded Ms. Gutierrez lacked a reasonable expectation of privacy in her mother's apartment. As to Ms. Flores, it concluded Deputy Maynes's entry was reasonable under both the hot-pursuit and emergency-aid exceptions to the warrant requirement and that, even if Deputy Maynes violated the Fourth Amendment, Plaintiffs had not shown he had violated clearly established law.

On appeal, Plaintiffs contend Ms. Gutierrez had a reasonable expectation of privacy in the apartment because it was her home too or because she was an overnight social guest. We decline to resolve this issue. Regardless of whether Ms. Gutierrez had a

---

[3] To her credit, Plaintiffs' counsel acknowledges that her briefing in the district court was deficient and that she "has learned much over the duration of this case." Aplt. Reply Br. at 9.

reasonable expectation of privacy in the apartment, Plaintiffs have not shown that Deputy Maynes's entry violated law that was clearly established at the relevant time—July 4, 2009.

We also decline to address Plaintiffs' arguments that Deputy Maynes's entry violated the Fourth Amendment. Instead, we affirm based on the clearly-established-law prong of the qualified immunity analysis, *see Pearson*, 555 U.S. at 236 (permitting courts to address the qualified immunity prongs in any order), in particular as to the hot-pursuit justification for entry.

Plaintiffs dispute the hot-pursuit exception applies here. They argue Deputy Maynes had probable cause to suspect Ms. Gutierrez of only misdemeanor offenses,[4] and they contend "[p]robable cause to arrest for a misdemeanor, by itself, does not justify warrantless entry into a home under the hot pursuit exception." Aplt. Br. at 25. Further, they argue that, as of 2009, it was clearly established that "a police officer could not enter a home without a warrant while in hot pursuit of a suspected misdemeanant." *Id.* at 28.

---

[4] The district court determined that Deputy Maynes had probable cause to arrest Ms. Gutierrez for aggravated fleeing, a felony under N.M. Stat. Ann. § 30-22-1.1. Plaintiffs argue this was error, but we need not decide whether the district court erred in its probable cause assessment. Even assuming Deputy Maynes had probable cause to suspect Ms. Gutierrez of only misdemeanor offenses, Plaintiffs have not shown that his hot-pursuit entry into the apartment violated clearly established law.

Relatedly, because we conclude a reasonable officer in Deputy Maynes's position could have thought that the Fourth Amendment allowed a warrantless entry under the hot-pursuit exception, we have no need to address whether his entry would have been justified under the emergency-aid exception or to assess whether any violation would have been one of clearly established law as to that exception.

- 14 -

We reject this argument because the law is unsettled even now as to whether an officer's hot pursuit of a misdemeanor suspect into a home violates the Fourth Amendment. In *Stanton v. Sims*, 134 S. Ct. 3 (2013) (per curiam), the Supreme Court explained that "federal and state courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home without a warrant while in hot pursuit of that suspect." 134 S. Ct. at 5. In reversing the Ninth Circuit's decision to deny qualified immunity to an officer on this issue, the Court emphasized that its earlier cases had not decided this question.[5] *Id.* at 6-7. And the Court pointedly declined to express any view on the constitutionality of warrantless entries made in hot pursuit of misdemeanor suspects. *Id.* at 7.

As for Tenth Circuit authority, Plaintiffs cite *Mascorro v. Billings*, 656 F.3d 1198 (10th Cir. 2011), and although they acknowledge a 2011 decision cannot serve as clearly established law in 2009, Plaintiffs nevertheless appear to argue that *Mascorro*'s discussion of "serious offenses" and its citation to an earlier case, *Bledsoe v. Garcia*, 742 F.2d 1237 (10th Cir. 1984), supply the clearly established law they need. Aplt. Br. at 25-28. We disagree.

_____

[5] For instance, *United States v. Santana*, 427 U.S. 38 (1976), affirmed a warrantless home entry where police were in hot pursuit of a felony suspect, but the *Stanton* Court said that "though *Santana* involved a felony suspect, we did not expressly limit our holding based on that fact." *Stanton*, 134 S. Ct. at 6. Similarly, the Court explained that "nothing in the opinion" in *Welsh v. Wisconsin*, 466 U.S. 740 (1984), which requires consideration of offense gravity as part of an exigency analysis, "establishes that the seriousness of the crime is equally important *in cases of hot pursuit*." 134 S. Ct. at 6.

- 15 -

The events in *Mascorro* occurred in July 2007. In that case we determined that an officer was not entitled to qualified immunity on an unlawful entry claim where he had pursued a fleeing 17-year-old driver into his family home. 656 F.3d at 1202. We observed that the offense—driving without taillights—was a misdemeanor; the officer was "well acquainted" with the minor; the risk of flight was "somewhere between low and nonexistent" because the home had just one exit; there were no concerns about evidence destruction, officer safety, or public safety; and there was no indication that postponing action to obtain a warrant risked any other serious consequences. *Id.* at 1207. On those facts, we concluded the hot-pursuit exception did not justify the officer's warrantless entry. *Id.* We further concluded that at the time of the incident—July 2007—it was clearly established that:

> [T]he sort of exigent circumstances permitting officers to enter a suspect's home without a warrant in pursuit of the suspect . . . must involve a serious offense coupled with the existence of an immediate and pressing concern such as destruction of evidence, officer or public safety, or the possibility of imminent escape.

*Id.* at 1209. *Mascorro* thus requires a "serious offense" along with other exigent circumstances, but *Mascorro* did not define "serious offense" or establish that warrantless entries made in hot pursuit of all misdemeanor suspects necessarily violate the Fourth Amendment.

Plaintiffs argue their case fits *Mascorro* because Ms. Gutierrez's misdemeanor offenses were not sufficiently serious. They cite *Bledsoe*, but in that case we concluded the "exception of exigent circumstances" *permitted* a warrantless entry made to arrest a

- 16 -

suspected misdemeanant. 742 F.2d at 1241. An officer went to the Bledsoe residence to arrest Larry Bledsoe on a bench warrant for failure to appear and to investigate his absent without leave ("AWOL") status from the military, which was a misdemeanor punishable by up to a year of incarceration. *Id.* at 1238, 1241. After the officer spoke with Bledsoe at the door and confirmed he was AWOL, the officer allowed Bledsoe to go back inside to tell his mother he would be going to jail. *Id.* at 1238. Moments later, the officer heard commotion and profanity from inside the house. *Id.* He and other officers entered the home and arrested two women who interfered with the search for Bledsoe. *Id.* The women sued the officers under § 1983, alleging the police were not allowed to enter the house. *Id.* at 1238-40. We determined exigent circumstances—specifically, the gravity of the AWOL offense, the disturbance inside the house, and the possibility of Bledsoe's flight—justified the warrantless entry. *Id.* at 1241-42.

Plaintiffs' argument that Ms. Gutierrez's offenses were not as serious as the offense in *Bledsoe* does not, even if accepted, carry their burden to show unlawful entry in violation of clearly established law. For one thing, *Bledsoe* was not a hot-pursuit case. *See Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984) (indicating that hot pursuit is implicated where there is "immediate or continuous pursuit . . . from the scene of a crime"). Moreover, because we determined in *Bledsoe* that the officers' warrantless entry was reasonable, the case did not set a boundary on minimum offense severity. An officer in Deputy Maynes's position, armed with knowledge of *Bledsoe*, would not reasonably know which misdemeanors were sufficiently serious to justify a warrantless entry or

- 17 -

sufficiently minor to bar entry. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."), *overruled in part on other grounds by Pearson*, 555 U.S. 223; *see also al-Kidd*, 563 U.S. at 742 (instructing lower courts "not to define clearly established law at a high level of generality").

Neither *Mascorro* nor *Bledsoe* can do the work Plaintiffs need to meet their burden, and they cite no other hot-pursuit cases. We therefore affirm the district court's grant of summary judgment to Deputy Maynes on Count I because Plaintiffs failed to demonstrate that it was "beyond debate," *al-Kidd*, 563 U.S. at 741, in 2009 that the Constitution prohibited a warrantless entry based on hot pursuit in the circumstances presented here.

3. **Unlawful Seizure**

Plaintiffs alleged in Count II, among other claims not relevant to this appeal, that "Defendant Maynes' tasing of Ms. Flores constituted a seizure that was not supported by probable cause." Aplt. App., Vol. 1 at 40 ¶ 73; *see also id.* ("[T]he tasing of Ms. Flores in this case violated her Fourth Amendment rights.").

The district court granted Deputy Maynes summary judgment on this claim because Plaintiffs failed to identify legal authority or record evidence to support their theory that Deputy Maynes's act of tasing Ms. Flores on the leg was a seizure in violation of clearly established law. Aplt. App., Vol. 5 at 183-86. We agree that Plaintiffs failed

to point to clearly established law and affirm on that basis.

Plaintiffs alleged that Deputy Maynes violated Ms. Flores's Fourth Amendment rights in two respects. First, in Count III, Plaintiffs alleged Deputy Maynes used excessive force against Ms. Flores. But, as already discussed, the district court granted summary judgment to Deputy Maynes on this claim, and on appeal Plaintiffs waived review of the excessive force claim as to Ms. Flores, *see supra* n.2. Second, in Count II, we understand Plaintiffs to allege that Deputy Maynes unreasonably seized Ms. Flores when he tased her because, irrespective of the amount of force used, he had no legal justification to seize her at all. They argue any seizure of Ms. Flores was unreasonable because she "was not suspected of committing any crimes." Aplt. Br. at 33.

On Count II, we must again affirm the grant of summary judgment. Plaintiffs failed to show the law was clearly established in 2009 that a tasing under these circumstances was a seizure, and we therefore need not address whether Deputy Maynes had the reasonable suspicion or probable cause necessary to seize Ms. Flores.

Plaintiffs' summary judgment opposition brief argued that Deputy Maynes lacked a constitutionally sufficient justification to seize Ms. Flores. Plaintiffs, however, did not persuade the district court that Ms. Flores was seized in the first place. They cited *Cavanaugh v. Woods Cross City*, 625 F.3d 661 (10th Cir. 2010), for the proposition that "the use of a taser on a person results in a seizure of the victim." Aplt. App., Vol. 5 at 104. But the district court concluded "*Cavanaugh* does not support this proposition." *Id.* at 184.

- 19 -

In *Cavanaugh*, police responded to a non-emergency request to find Shannon Cavanaugh, who had walked out of her home after a domestic dispute. 625 F.3d at 662. As Ms. Cavanaugh was returning home and approaching her front door, an officer discharged his taser into her back without warning. *Id.* at 663. "Ms. Cavanaugh, whose feet were on the front steps of her home, went rigid, spun around, and struck her head on the concrete steps." *Id.* As the district court observed, "Ms. Cavanaugh fell and was incapacitated; she was in fact restrained." Aplt. App., Vol. 5 at 184; *see also Cavanaugh*, 625 F.3d at 665 (noting Ms. Cavanaugh was arrested). But when she sued under § 1983, her claim was for excessive force, not unlawful seizure. 625 F.3d at 662. We affirmed the district court's denial of qualified immunity and emphasized, as part of our excessive force analysis, the severe harm tasers can cause, *see id.* at 665, 667, but whether the use of a taser invariably seizes a person for Fourth Amendment purposes was not presented.

Here, after reviewing *Cavanaugh*, and finding none of Plaintiffs' other authorities apposite, the district court concluded Plaintiffs had failed to show that Ms. Flores was seized under clearly established law.[6]

On appeal, Plaintiffs do not cite *Cavanaugh*. Instead, they rely upon *Terry v.*

---

[6] Before the district court, Plaintiffs also argued Ms. Flores was seized by the taser because it caused her to submit to Deputy Maynes's authority: in response to the tasing, she ceased her pleas on behalf of her daughter. *See Brendlin v. California*, 551 U.S. 249, 262 (2007) (holding that "what may amount to submission depends on what a person was doing before the show of authority"). The district court rejected this theory, however, because Plaintiffs failed to identify any record evidence to support it. Plaintiffs do not advance this theory on appeal.

*Ohio*, 392 U.S. 1 (1968), *Tennessee v. Garner*, 471 U.S. 1 (1985), and *Florida v. Bostick*, 501 U.S. 429 (1991), for general Fourth Amendment propositions that, for example, a seizure requires at least a reasonable, articulable suspicion, and that an officer's actions are judged for objective reasonableness. Aplt. Br. at 32; *see also* Oral Arg. at 6:16-37. Plaintiffs also advise that "[a] person is seized when a reasonable person would believe that she is not free to leave." Aplt. Br. at 32 (citing *Bostick*, 501 U.S. at 435).

These general principles do not satisfy Plaintiffs' burden to show Ms. Flores was unreasonably seized in violation of law that was clearly established at the time. We note that the Supreme Court has said the free-to-leave test "states a *necessary*, but not a *sufficient*, condition for seizure." *California v. Hodari D.*, 499 U.S. 621, 628 (1991).

Plaintiffs do not cite authority that clearly establishes Ms. Flores was seized. Although they cite several taser cases, Aplt. Br. at 33 (citing *Wilson v. City of Lafayette*, 510 F. App'x 775 (10th Cir. 2013) (unpublished); *Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007)), these cases concerned excessive force claims and did not establish that the tasing of Ms. Flores necessarily constituted a seizure.

Plaintiffs not only failed to provide legal authority showing it was clear in 2009 that a tasing under these circumstances was a seizure, they did not even provide general authority showing when other methods of police restraint constitute seizures in like circumstances. One Tenth Circuit decision, issued a year before the incident here, suggests that carrying this burden would have been a tall task. *See Clark v. Edmunds*, 513 F.3d 1219, 1221-22 (10th Cir. 2008) (where sheriff was taking a woman into

- 21 -

protective custody, he did not seize the woman's mother by pushing her out his way).  At

oral argument, Plaintiffs candidly acknowledged they did not cite a case establishing

when use of a taser effects a seizure.  Oral Arg. at 8:22-32; *see also id.* at 9:11-35.[7]

We do not and need not decide here whether Ms. Flores was seized.  Because

Plaintiffs did not proffer clearly established authority that Ms. Flores was seized, they did

not carry their burden to rebut qualified immunity on this illegal seizure claim.  *See*

*Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the

burden of citing to us what he thinks constitutes clearly established law.").  Deputy

Maynes is entitled to qualified immunity, and we accordingly affirm the district court's

grant of summary judgment.

### 4.  **Plaintiffs' Rule 56(d) Motion**

a.  *Additional Legal Background*

In response to a summary judgment motion, a non-moving party may request

additional discovery by showing via affidavit or declaration that without discovery "it

cannot present facts essential to justify its opposition" to the motion.  Fed. R. Civ. P.

56(d).  "The court may: (1) defer considering the motion or deny it; (2) allow time to

obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate

order."  *Id.*

---

[7] Plaintiffs' counsel further explained that what happened to Ms. Flores "may not have been a seizure," but Plaintiffs contend Deputy Maynes's conduct as to Ms. Flores was "gratuitous."  Oral Arg. at 9:12-35.

In the Tenth Circuit, a non-movant requesting additional discovery under Rule 56(d) "must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015) (alteration in original) (quotations omitted). When the summary judgment motion is based on qualified immunity, the non-movant's Rule 56(d) affidavit must also "demonstrate a connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion." *Lewis v. City of Ft. Collins*, 903 F.2d 752, 754 (10th Cir. 1990) (alteration in original) (quotations omitted). Thus, "it is insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or that evidence supporting a party's allegation is in the opposing party's hands." *Id.* (quotations omitted).

b. *Standard of Review*

"We review the district court's denial of a Rule 56(d) motion for an abuse of discretion." *Trans-Western Petrol., Inc. v. United States Gypsum Co.*, 830 F.3d 1171, 1175 (10th Cir. 2016). "[T]he party requesting deferral of judgment . . . shoulders the burden of demonstrating an abuse of discretion." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1192 (10th Cir. 2015).

c. *Analysis*

Plaintiffs' Rule 56(d) motion argued "the information necessary for Plaintiffs to have a full and fair opportunity to respond to Defendant Maynes' motions for summary judgment is exclusively in the possession of the Defendant." Aplt. App., Vol. 5 at 35. They requested, among other things, "discovery as to Defendant Maynes' knowledge, as well as the knowledge of various witnesses," and information about when the dispatch "recordings were 'lost' or became unavailable." *Id.* at 33. The affidavit of Plaintiffs' counsel also specified that Plaintiffs wanted information about Deputy Maynes's prior training on use of force, the working condition of his taser, and the observations of other officers that night, among other topics. *Id.* at 38-40. Plaintiffs contended they had "diligently pursued discovery" through other efforts without success. *Id*. at 35.

The district court denied Plaintiffs' Rule 56(d) motion as to both of Deputy Maynes's summary judgment motions. As to the first motion, the court found Plaintiffs' Rule 56(d) request came more than three months after they had filed their factually detailed response opposing summary judgment. Given the timing, the court questioned whether Plaintiffs' requested discovery was essential to their ability to respond. As to the second summary judgment motion, the court concluded Plaintiffs' discovery request was "wide-ranging" and failed to focus on the critical issues for summary judgment. *Id.* at 58.

Plaintiffs contend the district court should have granted them discovery "narrowly tailored to uncover facts needed to rule on the immunity claim." Aplt. Br. at 42. They argue their requested information relates to the qualified immunity issue because, for

example, Deputy Maynes's "knowledge at the time of Plaintiffs' seizures . . . goes to reasonableness." *Id.* And they reject the district court's reasoning as to timeliness because even though they responded "to the best of their ability," they "nonetheless required more information to properly defend against the motions." *Id.* at 43.

We perceive no abuse of discretion. As to the first summary judgment motion, we do not fault the district court for denying Plaintiffs' Rule 56(d) motion as untimely, especially given the court had previously explained the Rule 56 procedure and this was Plaintiffs' fourth motion for discovery. As to the second summary judgment motion, although Plaintiffs' requested information is broadly relevant to the qualified immunity issue, their Rule 56(d) motion did not explain *how* specific information was *essential* to their summary judgment opposition. *See* Fed. R. Civ. P. 56(d) (stating non-movant must show "it cannot present facts *essential* to justify its opposition" (emphasis added)). For instance, Plaintiffs never linked the dispatch recordings they requested in their motion with their ability "to justify [their] opposition" to summary judgment on the qualified immunity issue, *id.*, and this deficiency applies to their other requested discovery topics. As the district court determined, Plaintiffs failed to show "how further discovery would assist in overcoming" summary judgment. Aplt. App., Vol. 5 at 59. Despite Plaintiffs' general arguments that additional discovery would be helpful, we cannot say the district court's denial of their Rule 56(d) motion was an abuse of its discretion.

## III.  **CONCLUSION**

We affirm the district court's judgment.

- 25 -